James L. COLLINS, Plaintiff,

v.

Donald E. BORDENKIRCHER, Warden, West Virginia State Penitentiary, et al., Defendants.

Civ. A. No. 74–205–E.

United States District Court, N. D. West Virginia, Elkins Division.

Nov. 3, 1975.

---

26. See footnote 25, Explanatory Note.

John Marshall, III, Wheeling, W. Va., for plaintiff.

Chauncey H. Browning, Jr., Atty. Gen., Charleston, W. Va., for defendants.

## MEMORANDUM ORDER

MAXWELL, Chief Judge.

Plaintiff, an inmate in the West Virginia Penitentiary at Moundsville, commenced this action to redress alleged deprivations of his constitutional rights arising from his transfer to the maximum security section of the penitentiary. Plaintiff seeks injunctive and monetary relief. Jurisdiction is invoked under 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

Plaintiff, in his pro se complaint, alleged that he was denied due process and subjected to double jeopardy as a result of his transfer on December 3, 1973, to the prison's maximum security section.[1] At trial, Plaintiff was permitted to amend his complaint to allege denial of due process in connection with a

---

1. The charging portion of Plaintiff's pro se complaint is as follows:

"1. Plaintiff was put in the punishment section on December 3, 1973, without first being given notice of the charge against him; denied the right to call witnesses in his behalf; denied the right to be confronted with his accusers; denied counsel, and transferred three (3) times in one (1) night without a hearing of any kind. ·

2. Plaintiff has already been punished by prison officals [sic] on discipline charge for the offense of escape and · then punished again by receiving additional sentence of one (1) year by Marshall County Circuit Court on the same charge of escape after been already punished by Prison officals [sic]."

second transfer to maximum security on September 6, 1974.

By memorandum order, entered on October 31, 1974, the Court dismissed the double jeopardy claim.[2]

On October 19, 1974, defendants Gordon Faulkner, Director of the West Virginia Division of Corrections, and Major Ready, a penitentiary guard, both moved pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, to dismiss the complaint for failure to state a claim upon which relief can be granted. Major Ready argued that the complaint should fall as to him because there is no allegation that he committed any act which violated plaintiff's civil rights. Defendant Faulkner sought dismissal because "no personal involvement" by him was alleged. In particular, Faulkner asserted that the doctrine of respondeat superior does not apply in actions brought under 42 U.S.C. § 1983. The Court agreed with defendants Ready and Faulkner that they cannot be held liable for damages without some showing that they were personally involved. Nevertheless, the Court determined that the continued presence of Ready and Faulkner in this action was proper for the purpose of resolving any equitable issues which might be present.[3]

John Marshall, III, an experienced trial attorney in both state and federal courts, responded affirmatively to the Court's request to represent the plaintiff in this action. Mr. Marshall is presently City Solicitor for the City of Wheeling, West Virginia, and is a former Assistant United States Attorney. Because of the similarity of issues in this and several other state prisoner civil rights cases pending before this Court, an order was entered on April 2, 1975, designating Mr. Marshall as counsel of record for sixteen prisoner plaintiffs.[4]

2. The relevant part of the October 31, 1974, Memorandum Order provides:

"Upon further consideration of the allegations set forth in paragraph 2 of the complaint filed herein, it appears that the matters raised there question the validity of Plaintiff's escape conviction. It is Plaintiff's contention that such conviction, coming after administrative punishment had already been imposed, amounted to double jeopardy. These are grounds which challenge the fact or duration of Plaintiff's confinement and which are therefore cognizable through habeas corpus. Since there has been no exhaustion of state remedies as required by the federal habeas corpus statutes, 28 U.S.C. [§ 2241] et seq., the allegations set forth in paragraph 2 of the complaint must be dismissed. Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

Therefore, it is further ORDERED that paragraph 2 of the complaint herein be, and the same hereby is, dismissed."

3. The Memorandum Order of October 31, 1974, further provides:

"Several recent case decisions now make it clear that personal involvement on the part of the defendants is a requisite for the award of damages in cases brought under 42 U.S.C. § 1983. E. g., Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973); Adams v. Pate, 445 F.2d 105 (7th Cir. 1971). The common law doctrine of [respondeat] superior will not serve to hold a non-participating party vicariously liable for damages occasioned by the actions of someone serving under this authority. This rationale has no vitality, however, where the relief sought is equitable.

In the case now before the Court, Plaintiff contests certain procedures followed by authorities of the West Virginia Department of Corrections. In addition to damages, he seeks both declaratory and injunctive relief from the operation of these procedures. Gordon Faulkner, the Director of the Department of Corrections, and Major Ready, a Correction Officer at the West Virginia State Penitentiary, may not be held liable for damages in this action without some showing of their personal involvement in the conduct complained of. However, their presence in this action for the purposes of determining the equitable issues is proper.

For the reasons above-stated, it is ADJUDGED and ORDERED that the motion to dismiss submitted on behalf of Defendants Faulkner and Ready be, and the same hereby is, denied."

4. The following excerpt from the April 2, 1975, order deals with Mr. Marshall's designation:

"Pursuant to 28 U.S.C. § 1915(d) (1970), the Court has requested John Marshall III, an attorney practicing before the bar of the Court, to serve as counsel for Plaintiffs in each of the above-styled civil actions, all of whom are proceeding herein in forma pauperis. With a distinguished career as a mem-

After extensive pre-trial discovery,[5] a consolidated trial of this and other companion civil rights suits brought by penitentiary inmates was commenced on April 22, 1975.[6]

ber of the bar of West Virginia, Mr. Marshall has accepted the Court's request.

Accordingly, it is ORDERED

that Mr. Marshall, an attorney, is appointed as counsel for the Plaintiffs in each of the above-styled civil actions".

5. The April 2, 1975, order provided for the following discovery:

"The proper authorities [shall] make each of the above named Plaintiffs available to meet with Mr. Marshall at the West Virginia State Penitentiary April 14, 1975;

that on said date all documents and records pertinent to each of the above-styled actions be made available to Mr. Marshall for his inspection and that copies of those documents and records be furnished him upon request;

that Mr. Marshall be allowed to meet with and interview Plaintiffs' witnesses as Mr. Marshall deems necessary to these cases;

that the parties Defendant and their prospective witnesses be available at the time for discussion of these cases with Mr. Marshall; and

that Mr. Richard E. Hardison, counsel for the Defendants, be present on said date for discussion of these cases with Mr. Marshall and to assure that Mr. Marshall is afforded complete cooperation by the staff of the West Virginia State Penitentiary."

6. The Court, by its Order of April 2, 1975, assigned sixteen separate prisoner civil rights suits to Mr. Marshall. These civil actions involved similar issues of fact and common contentions of law, and a number of the actions assigned to Mr. Marshall were identical both as to parties and issues.

In addition to the civil actions assigned to Mr. Marshall, two other groups of prisoner-instituted civil rights actions were also consolidated, with separate counsel representing plaintiffs in each of the other two groups. These groups of prisoner actions also contained similar factual issues and legal contentions.

Mr. George B. Vieweg, III, a former City Solicitor for the City of Wheeling, and an experienced trial practitioner, agreed to represent a group of plaintiffs and was assigned the following nine civil actions:

*Smitty Edwin Harding, Plf., v. Donald E. Bordenkircher, Warden, Def.,* C/A 74–255–E;

*Douglas E. Bragg, Plf., v. Donald E. Bordenkircher, Warden, Def.,* C/A 74–238–E;

*Virgil Norman Back, et ano., Plfs., v. Warden, Def.,* C/A 74–93–E;

*Donald Edward Clark, Plf., v. Donald E. Bordenkircher, Warden, et al., Defs.,* C/A 74–36–E;

*David D. York, Plf., v. Warden, Def.,* C/A 74–112–E;

*Arnold Lee Vance, Plf., v. Donald E. Bordenkircher, Warden, Def.,* C/A 74–259–E;

*Harvey Lawson, Plf., v. Warden, et al., Defs.,* C/A 74–94–E;

*William Boyd Walters, et al., Plfs., v. Warden, et al., Defs.,* C/A 73–91–E; and, *Virgil Norman Back, Plf., v. Ira M. Coiner, et al., Defs.,* C/A 73–14–E.

Lester C. Hess, Jr., an attorney with broad experience in both State and Federal Courts, also agreed to represent a group of plaintiffs in these prison-related actions. The nine civil actions assigned to Mr. Hess are as follows:

*William Lee Adkins, et al., Plfs., v. Donald E. Bordenkircher, Warden, Def.,* C/A 74–213–E;

*William Lee Adkins, Plf., v. Warden, Def.,* C/A 74–260–E;

*Richard Martin, Plf., v. Donald E. Bordenkircher, Warden, Def.,* C/A 74–204–E;

*Dale Gordon, et al., Plfs., v. Donald E. Bordenkircher, Warden, Def.,* C/A 74–203–E;

*Eddie Gray, Plf., v. Donald E. Bordenkircher, Warden, Def.,* C/A 74–181–E;

*Stewart A. Carpenter, Plf., v. Gordon Faulkner, et al., Defs.,* C/A 74–156–E;

*Russell Workman, Plf., v. Warden, Def.,* C/A 74–121–E;

*Randy Tackett, Plf., v. Warden, W. Va. State Penitentiary, Def.,* C/A 74–115–E; and

*Stewart Carpenter, Plf., v. Warden, W. Va. State Penitentiary, Def.,* C/A 75–8–E.

The following sixteen civil actions were assigned to Mr. Marshall:

*Charles Pace, Plf., v. Donald E. Bordenkircher, Warden, et al., Defs.,* C/A 74–41–E;

*James Auxier, Plf., v. Donald E. Bordenkircher, Warden, et al., Defs.,* C/A 74–55–E;

*James L. Collins, Plf., v. Donald E. Bordenkircher, Warden, et al., Defs.,* C/A 74–205–E;

*Albert E. Nelson, Plf., v. Warden, W. Va. State Penitentiary, Def.,* C/A 74–215–E;

*Donald W. Roberts, Plf., v. Donald E. Bordenkircher, Warden, et al., Defs.,* C/A 74–222–E;

*William A. Snyder, Plf., v. Donald E. Bordenkircher, Warden, et al., Defs.,* C/A 74–265–E;

At trial in this consolidated action, the Court, sitting without a jury, first heard all of the plaintiffs and their witnesses. Defense testimony was presented at the conclusion of all evidence offered by the plaintiffs. Since these consolidated civil actions involved extensive similarity of factual issues, defense witnesses testified as to certain general conditions, policies and activities at the West Virginia Penitentiary. This testimony thus provided background information which was of great assistance to the Court in considering the specific issues raised by the individual plaintiffs. The Court believes that the procedural development of these prisoner civil rights cases was not only efficient but, more importantly, did not minimize the consideration to which each plaintiff is entitled. The consolidated discovery, pre-trial and trial procedures in these cases prevented needless repetition and resulting loss of time not only for the Court but also for the parties, counsel and nonparty witnesses. (See footnote 9, *infra*, for the procedure for final disposition of the individual cases.)

Turning to plaintiff Collins' transfer to the maximum security section on December 3, 1973, Collins admitted at trial that this transfer and confinement was immediately preceded by his apprehension on the front lawn of the penitentiary, after he had jumped from a window. The Acting Warden at the penitentiary, Arthur L. McKenzie, testified that the Plaintiff was incarcerated in maximum security following this escape effort only until escape charges brought in the Circuit Court of Marshall County, West Virginia, were resolved. Plaintiff was released from maximum security confinement around mid-August 1974, after he was given a one-year sentence for escape in the Circuit Court of Marshall County.

■■ Where there is probable cause to believe that an inmate has engaged in criminal activity, a temporary change in his security status may be effected pending disposition of the criminal matter without having "the usual adversary hearing aimed at deciding the ultimate factual issues." *Almanza v. Oliver,* 368 F.Supp. 981, 984 (E.D.Va.1973). Escape from the penitentiary is a criminal offense, West Virginia Code, Section 61–5–10. Thus, Plaintiff's claim of denial of due process with respect to his December 3, 1973, transfer to the maximum security section fails in light of the evidence presented and the applicable law.[7] This disposes of the claims raised in Plaintiff's pro se complaint.

Although neither alleged nor suggested in plaintiff Collins' pro se pleadings,

*James E. Oden, et ano., Plfs., v. Warden, W. Va. State Penitentiary, Def.,* C/A 74–266–E;
*Steven M. Moore, Plf., v. Donald E. Bordenkircher, Warden, Def.,* C/A 74–271–E;
*Carl Curtis Greathouse, Plf., v. Warden, W. Va. State Penitentiary, Def.,* C/A 75–4–E;
*Jesse W. White, Plf., v. Donald E. Bordenkircher, Warden, Def.,* C/A 74–18–E;
*Jesse W. White, Plf., v. Donald E. Bordenkircher, Warden, et ano., Resps.,* C/A 74–65–E;
*Jesse W. White, Petr., v. Donald E. Bordenkircher, Warden, Resp.,* C/A 74–146–E;
*Jesse W. White, Plf., v. Donald E. Bordenkircher, Warden, et ano., Defs.,* C/A 74–148–E;
*Jess White, et al., Plfs., v. Gordon Faulkner, et al., Defs.,* C/A 74–174–E;
*James W. Key, Plf., v. Donald E. Bordenkircher, Warden, et ano., Defs.,* C/A 74–192–E; and
*Jesse White, Plf., v. Irene Neitzl, Nurse, Def.,* C/A 75–14–E.
Pre-trial discovery provisions in the actions assigned to Mr. Vieweg and Mr. Hess were the same as those in the actions assigned to Mr. Marshall. At the consolidated trial it was apparent that counsel for the plaintiffs worked closely together in preparing and presenting the various cases.

7. Collins' December 1973 transfer to maximum security does not have to be measured against *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935, decided June 26, 1974, since the United States Supreme Court expressly declined to apply the *Wolff* requirements retroactively. *Id.* at 573, 94 S. Ct. 2963.

it developed at trial that prison officials returned Collins to maximum security in September 1974, because of his alleged participation in a conspiracy to escape. Upon motion made during trial, the Court allowed plaintiff Collins to amend his complaint to allege a denial of due process by reason of his confinement to maximum security beginning September 6, 1974.

The evidence reflected that on September 6, 1974, the Plaintiff was administratively segregated to what is referred to as the prison's Adjustment Center, which is the maximum security unit. This action was taken when inmate information and other investigation revealed that Plaintiff and five other inmates were planning an escape from the penitentiary. Acting Warden McKenzie testified that plaintiff Collins appeared before the penitentiary's Disciplinary Committee on the charge of conspiracy to escape. However, McKenzie acknowledged that all the procedural due process steps required by *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), were not followed. For example, the testimony indicated that plaintiff Collins was not given advance written notice of the charges against him, nor was he given a " 'written statement by the [Disciplinary Committee] as to the evidence relied on and reasons' for the disciplinary action." (*Id.* at 564, 94 S.Ct. at 2979).

Acting Warden McKenzie further testified that plaintiff Collins was reassigned to maximum security on September 6, 1974, to await disposition of the charge of conspiracy to escape. When the Prosecuting Attorney of Marshall County, West Virginia, elected not to seek an indictment against Plaintiff, the alleged violation was referred back to the prison administration for disciplinary action and, as a result, Plaintiff was kept in maximum security until January 1975. Reports to the effect that Plaintiff conspired to escape appear in his prison record. The Acting Warden assumed that information concerning the administrative action on the alleged escape conspiracy was forwarded to the West Virginia Board of Probation and Parole.

■■ The thrust of plaintiff Collins' attack on his confinement in the maximum security section of the penitentiary from September 1974 into January 1975 goes to the denial of procedural due process. The trial testimony adduced with respect to plaintiff Collins, together with Defendant's Exhibit No. 1, convinces the Court that the requirements of *Wolff, supra,* which was decided over two months prior to Collins' transfer to maximum security, were not fully complied with, and that Collins is entitled to some relief on this basis. The Court believes, however, that the relief to be afforded should be equitable in nature. The circumstances of this case, when considered in light of the fluidity of this currently emerging field of law, do not establish the absence of good faith on the part of the prison authorities which would subject them to liability for monetary damages. *Skinner v. Spellman,* 480 F.2d 539 (4th Cir. 1973); *Eslinger v. Thomas,* 476 F.2d 225 (4th Cir. 1973).[8]

8. Inter-penitentiary communications, introduced at trial as Defendant's Exhibit 1, reveal that the penitentiary administration acted in good faith in placing Collins in maximum security on September 6, 1974.

The September 13, 1974, report of Major Charles C. Davis, Chief Correctional Officer, to Donald E. Bordenkircher, Warden, states (Deft.'s Exh. 1, page 7) :

"During the week of September 2, 1974, reliable inmate information was received by the Chief Correctional Officer that a group of some four (4) or five (5) inmates were conspiring to escape from the West Virginia State Penitentiary.

At the same time, other staff officers, were receiving this information from other known sources.

As the investigation proceeded and the information was compiled, it became quite evident that there was a probable conspiracy to escape in progress.

The inmates being named in the conspiracy, were identical from all sources of information.

At the conclusion of the evidence, Mr. Marshall, plaintiff Collins' attorney, joined by counsel who represented other prisoner plaintiffs in the consolidated trial, raised matters which go far beyond the issues raised by the pro se complaint and the amendment permitted during trial. By motion, Mr. Marshall advanced a new theory and sought to inject a new prayer for relief in these prisoner actions. Specifically, Mr. Marshall asserted that the rules and regulations in effect at the penitentiary were not promulgated pursuant to West Virginia statute and asked that the inmate-litigants' prison records "be expunged of any mention" of "discipline, punishment or any loss of privileges or solitary confinement".[9] Mr. Marshall further stated:

We submit that the punishment of these inmates over the last two years was not dealt or handed out as a result of the rules and regulations of the commissioner of public institutions, but rather as a result of the rules and regulations prepared by the associate warden and the warden. And therefore, any punishment or any type of restrictions are unlawful and they are not as a result of any authorized rules and regulations.

While the motion has certain constitutional overtones, it raises overriding questions of state law which the Court

---

On Friday, September 6, 1974, this perponderance [sic] of information was presented to the Warden, Donald E. Bordenkircher, and after reviewing all sources, the Warden directed the Chief Correctional Officer to place the following inmates, who were named in the conspiracy, in the Administrative Segregation Unit.

| | |
|---|---|
| Melvin Lambert | WVP# 47600 |
| John Perry | WVP# 46645 |
| James Coker | WVP# 47338 |
| Roger Black | WVP# 47121 |
| James Collins | WVP# 47582 |
| James Worthington | WVP# 47684." |

Warden Bordenkircher's memorandum, dated September 13, 1974, concerning Collins provides (Deft.'s Exh. 1, page 6):

"The above named individual's potential for violence and/or escape is clear when one reviews his past history. Mr. Collins is presently serving a thirty year sentence for the crime of Kidnapping. He has been unable to profit from past experiences and continues to become involved in situations where his behavior runs contrary to institutional rules and regulations.

Mr. Collins has an extensive escape history. He escaped from the West Virginia Forestry Camp on two occasions, escaped from the Boys Industrial School once, escaped from the Huttonsville Correctional Center on December 23, 1970, escaped from the Wood County Jail on July 23, 1972, and attempted to escape from the West Virginia State Penitentiary with two other inmates on December 3, 1973, by pulling a knife on a Correctional Officer. Without a doubt, Mr. Collins is an extreme escape risk.

As noted in the attached report, a preponderance of information concerning a conspiracy to escape from the West Virginia State Penitentiary was presented to the Warden on September 6, 1974; at that time, he directed to the Chief Correctional Officer to place Mr. Collins in Administrative Segregation.

Therefore, after a complete review of the evidence and taking all factors into consideration, it has been determined that Mr. Collins will remain in the North Hall Segregation Unit for an indefinate [sic] period of time."

Later, on October 23, 1974, in an entirely different prison administrative proceeding, plaintiff Collins was classified by the prison's Classification Committee as "maximum assaultive" and was assigned to housing in the prison's Adjustment Center. (Deft.'s Exh. 1, pages 4–5.)

Finally, while it is not a part of the record in this action and therefore not relied upon by the Court, the news media reported in August 1975, while this opinion was being prepared, that plaintiff Collins and a group of other inmates escaped from the West Virginia Penitentiary and were free for several days before being captured.

9. Relief was granted during the course of the trial in several of the consolidated prisoner actions. Other cases were dismissed for various reasons, all of which is reflected by orders entered in the particular prisoner cases. A number of cases were taken under advisement by the Court at the conclusion of the evidence in the consolidated trial. The motion made by Mr. Marshall applies to several cases which are under advisement.

believes should not, and cannot, be disposed of in this forum at this time. However, some discussion of the ramifications of the motion is useful for a general understanding of these prisoner cases, even though the consolidated trial was not conducted with a view to the development of the issues implicit in the post-evidentiary motion.

The responsibility for overseeing the West Virginia Penitentiary is vested in the State Commissioner of Public Institutions. West Virginia Code, Section 25–1–3, provides: "The state commissioner of public institutions shall manage, direct, control and govern the . . . West Virginia penitentiary . . . ." West Virginia Code, Section 25–1–5, gives the Commissioner "power to adopt rules and regulations for the government of [certain] institutions", including the penitentiary. Finally, West Virginia Code, Section 28–5–2, requires that the Commissioner "shall make such rules and regulations as the commissioner may deem best as to the treatment of the convicts, their discipline, punishment, diet, clothing, social intercourse, . . . the manner and duration of solitary confinement and other punishments . . . ."

Plaintiff Collins' motion attacks the prison rules and regulations of the "last two years" (i. e., from mid-1973 forward) on the ground that they were "prepared by the associate warden and the warden."

The testimony and exhibits offered during trial in the consolidated actions brought by prisoners represented by Messrs. Marshall, Vieweg and Hess make it clear that from March 1973 to July 1973 the West Virginia Penitentiary was caught up in rioting which was virtually continuous. A group of allegedly incorrigible prisoners was essentially in control of the penitentiary and a true state of emergency prevailed.

In July 1973, Donald E. Bordenkircher was appointed Warden of the Penitentiary and began with his staff, including the now Acting Warden McKenzie, to take necessary steps to control the rioting, restore institutional security, insure protection of inmates and restore other normal functions of the institution. The prison staff was aided in this effort by large numbers of West Virginia State Policemen who were temporarily assigned to duty in the penitentiary. Construction of an area designed to house incorrigible prisoners was completed. On July 19 and 20, 1973, twenty allegedly incorrigible inmates were confined to the new maximum security section, also known as the Adjustment Center or the North Hall Segregation Unit. This action was taken as to the twenty after prison officials studied prison records, court records and incident reports. Conduct of individual inmates during the rioting was also noted.

According to Acting Warden McKenzie, the restoration of order included the development of rules and regulations to govern the conduct of both prison administrative personnel and the inmates. From McKenzie's trial testimony, it appears that these rules were formulated in July and August 1973 by the Warden and other members of his staff. McKenzie testified that the rules were distributed to all inmates and staff personnel. McKenzie did not know whether the rules were sanctioned by the Commissioner of Public Institutions. In addition, Acting Warden McKenzie did not know of any rules and regulations forwarded to the penitentiary by the Commissioner since July 1, 1973, the date McKenzie joined the staff.[10]

---

10. At the time these cases were tried, Donald E. Bordenkircher was no longer Warden of the West Virginia Penitentiary and was not available to testify. Counsel for all parties apparently concluded that other witnesses were in possession of sufficient facts to try the issues raised and that Mr. Bordenkircher's testimony would have been cumulative only. Accordingly, there was no request for a continuance until Mr. Bordenkircher was available.

Because Collins' case was basically an attack upon two transfers to maximum security, one occurring in December 1973, and the other in September 1974, there was little or no development of the question of the existence, content or source of any rules and regulations which might have been in effect prior to July 1973.

Assuming *arguendo* that either the Commissioner of Public Institutions had failed to promulgate rules and regulations for the penitentiary, or that the rules existing in July 1973 had not been effective, a question arises concerning the Warden's independent powers.

The West Virginia Code, Section 28–5–3, gives the Warden broad powers:

> The warden shall be the chief executive officer of the penitentiary, and shall have charge of its internal police and management, and provide for feeding, clothing, working and taking care of the convicts, subject to the control of the state commissioner of public institutions. The warden shall promptly enforce all orders, rules and regulations made by the commissioner of public institutions, enforce strict discipline among the convicts, protect and preserve the property of the State, and may for that purpose punish the convicts, or cause them to be punished, in the manner authorized by the commissioner of public institutions.

■ Moreover, it is normally and properly the province of prison administrators to manage prisons within their broad grant of discretion. *Sewell v. Pegelow*, 291 F.2d 196 (4th Cir. 1961); *Davis v. United States*, 316 F.Supp. 80 (E.D.Mo.1970).

■ To treat Plaintiff's motion concerning the prison rules as a claim and dispose of it in this litigation could amount to needless interference with West Virginia's administration of its own affairs. First, this Court believes that the Courts of West Virginia should have the initial opportunity to pass upon the meaning of the West Virginia statutes so far as the relative powers of the State Commissioner of Public Institutions and the Warden of the penitentiary are concerned. Second, the challenged rules and regulations were obviously the product of emergency conditions and the question of the Warden's administrative powers, *vis-à-vis* other state officials, in the face of a complete breakdown in the prison discipline involves a matter of paramount interest to the State. For these reasons, this Court declines to exercise pendent jurisdiction to determine the questions of state law raised by plaintiff Collins' motion at the conclusion of the evidence. *See, Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

At the end of the motion, Mr. Marshall also attacked the 1973 rules and regulations on very general constitutional grounds. Mr. Marshall said: "These individuals have been deprived of their rights in regard to their constitutional needs."

Full factual development of the issues implicit in the motion might well reveal the absence of any constitutional question cognizable under 42 U.S.C. § 1983. *See, Milburn v. Fogg*, 393 F.Supp. 1164 (S.D.N.Y.1975). But to the extent that a federal constitutional issue might be raised, it is clearly overshadowed by compelling issues of West Virginia law. Indeed, an adjudication of the state law issues in a West Virginia tribunal might well avoid the necessity of reaching any federal constitutional question which might be present. Therefore, abstention appears appropriate here not only to minimize federal-state friction over a purely state affair, *i. e.*, the power of the Warden under the West Virginia Code, but also to avoid premature and perhaps unnecessary constitutional adjudication. *Kusper v. Pontikes*, 414 U.S. 51, 54–55, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973); *Burford v. Sun Oil Co.*, 319 U. S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Fralin & Waldron, Inc., v. City of Martinsville, Virginia*, 493 F.2d 481

(4th Cir. 1974). Accordingly, the Court abstains from deciding any constitutional question which might be implicit in the motion challenging the validity of present prison regulations under West Virginia law.

Finally, it would be unfair and prejudicial to the defendants for the Court to resolve the issues raised by Mr. Marshall's motion on behalf of the prisoners, especially since it would entail consideration of a new prayer for relief injected at the very end of the case. There was only scanty factual development of the issues suggested by the motion. The conduct of the trial was governed by the claims in the initial pleadings and the amendments permitted during trial. *See, Standard Title Insurance Co. v. Roberts*, 349 F.2d 613 (8th Cir. 1965); *Armstrong Cork Company v. Lyons*, 366 F.2d 206 (8th Cir. 1966).

For the reasons stated above, it is ordered that plaintiff Collins' prayer for relief arising out of his December 3, 1973, transfer to the maximum security unit of the West Virginia Penitentiary be, and the same is, denied.

It is further ordered that plaintiff Collins take nothing in his claim for monetary damages.

It is further ordered that the defendants, within a reasonable time, not to exceed thirty days, shall expunge from the records of plaintiff Collins all indications of disciplinary action which resulted in Collins' confinement in maximum security, beginning September 6, 1974. In the alternative, defendants may afford plaintiff a new hearing on the administrative charges of conspiracy to escape. If a new hearing is granted, plaintiff shall be given written notice of the charges no less than 24 hours prior to the hearing. In addition, after completion of the hearing, the prison's Disciplinary Committee must provide the plaintiff with a written statement of its findings, the reasons for any disciplinary action taken and the evidence relied upon by the committee. This statement of evidence need not set forth the names of any inmate informants or any facts which, in the opinion of prison administrators, could imperil institutional safety or lead to the identity of inmate informants. If the statement properly excludes certain items of evidence, "the statement should indicate the fact of the omission." *Wolff, supra,* 418 U.S. at 565, 94 S.Ct. at 2979.

It is further ordered that the defendants shall, within thirty days from the date of entry of this order, advise the Court in writing of the alternative chosen and of the action taken with respect to the Plaintiff.

It is further ordered that plaintiff Collins' post-evidentiary motion to erase completely his prison disciplinary record because prison rules and regulations allegedly were not promulgated in accordance with West Virginia statutes be, and the same is, denied. This denial is without prejudice to Collins' assertion of the issues suggested by the motion in West Virginia courts and is further without prejudice to the proper assertion of such issues in this Court if he is denied proper relief by West Virginia courts.

The Court notes that several cases involving penitentiary disciplinary proceedings which are challenged under *Wolff v. McDonnell, supra,* have been filed in this Court. Accordingly, the Court suggests that the Defendants attempt the initiation of steps which would lead to the promulgation of written rules and regulations for the penitentiary which meet the requirements of *Wolff.* To this end, the Court would further suggest that the West Virginia Commissioner of Public Institutions and the State's Attorney General be consulted and that West Virginia statutory requirements be considered. This might well avoid needless litigation in this Court and in the state courts. The Court requests that it be advised once each thirty days of efforts taken in connection with the development of such written rules and regulations.

Should the plaintiff desire to appeal the decision of this Court, written notice

of appeal must be received by the Clerk of this Court within thirty days from the date of the entry of this order, pursuant to Rule 4, Federal Rules of Appellate Procedure.

The Court further orders that John Marshall, III, be, and he is, relieved from further service as attorney for the Plaintiff in this case, with the Court's appreciation for having performed his duties in a capable, able and highly professional manner.

The foregoing shall serve as the Court's findings of fact and conclusions of law as required by Rule 52(a), Federal Rules of Civil Procedure.